UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLEY ANN SANGURAS, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>ANDREW SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>)<br>_____ ) | Case No.: 1:19-cv-1036 JLT<br><br>ORDER GRANTING PLAINTIFF'S APPEAL (DOC. 10) AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF SHELLEY ANN SANGURAS AND AGAINST DEFENDANT ANDREW SAUL, THE COMMISSIONER OF SOCIAL SECURITY |

Shelley Ann Sanguras asserts she is entitled to disability insurance benefits and a period of disability under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating her non-severe mental impairments and erred in finding at step five that Plaintiff had transferable skills. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In August 2015, Plaintiff filed an application for benefits, alleging she became disabled as of March 2014 due to constant lower back pain with radiculopathy, two microdiscectomy procedures on her lumbar spine, fusion in her lumbar-sacral spine, a shattered patella, glaucoma, and severe chronic migraines. (Doc. 7-4 at 3) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 7-4) Plaintiff's request for an administrative hearing

was granted, and she testified before an ALJ on January 16, 2018.  (*See* Doc. 7-3 at 29, 46)  The ALJ also called a vocational expert to testify at the hearing.  (*Id.* at 36, 69)  The ALJ found Plaintiff was not disabled and issued an order denying benefits on April 16, 2018.  (*Id.* at 29-37)  Plaintiff requested review of the ALJ's decision with the Appeals Council, which denied the request on May 31, 2019.  (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*

Pursuant to this five-step process, the ALJ determined first that Plaintiff had "not engaged in substantial gainful activity since March 7 2014, the alleged onset date."  (Doc. 7-3 at 31)  Second, the ALJ found Plaintiff's severe impairments included: "degenerative disc disease of the lumbar spine status post three surgeries; left knee degenerative joint disease; [and] migraines."  (*Id.*)  The ALJ noted Plaintiff also had a medically determinable impairment of depression, but found it was "nonsevere." (*Id.* at 32)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.*)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently climb ramps and stairs, never climb ladders, ropes or scaffolds, frequently balance, occasionally stoop, frequently kneel, occasionally crouch and frequently crawl, and must avoid concentrated exposure to extreme cold and wetness.

(*Id.*)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform [her] past relevant work" as a registered nurse.  (*Id.* at 36)  At step five, the ALJ found Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," such as outpatient admitting clerk, hospital admitting clerk, and rehabilitation clerk.  (*Id.* at 36-37)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 37)

///

## DISCUSSION AND ANALYSIS

Plaintiff contends the ALJ failed to evaluate "the impact of a non-severe mental impairment on the ability to perform semi-skilled work." (Doc. 10 at 4, emphasis omitted)  In addition, Plaintiff asserts the ALJ erred in evaluating her transferable skills from past relevant work. (*Id.* at 7-14)  The Commissioner asserts that substantial evidence supports the ALJ's findings, including the residual functional capacity and that Plaintiff acquired transferable skills. (Doc. 11 at 6-10)  Further, the Commissioner argues Plaintiff fails to show any error for failure to follow agency policy to determine transferability of skills. (*Id.* at 11-12)

**A.    Nonsevere Mental Impairment and the RFC**

Plaintiff notes that at step two, the ALJ determined she "had a medically determinable mental impairment but that the impairment did not rise to the level of severe." (Doc. 10 at 4)  Plaintiff asserts that later in the decision, "[t]he ALJ did not consider the presence of a non-severe mental impairment in finding the ability to perform other work." (*Id.*)  Plaintiff argues the positions of "outpatient admitting clerk, hospital admitting clerk, or rehabilitation clerk do not qualify as basic work activity." (*Id.*, emphasis omitted)  Thus, Plaintiff asserts the matter should be remanded for an ALJ to evaluate her nonsevere impairment and the effect on her ability to perform the work identified. (*Id.* at 7)

1.    ALJ's step two findings

At step two, a claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(a).

An impairment, or combination thereof, is "not severe" if the evidence establishes the impairment has "no more than a minimal effect on an individual's ability to do work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are 'the abilities and aptitudes necessary to do most jobs." *Id.*, §§ 404.1522(b),

416.922(b). These activities include "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id.*

The "Paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the mental impairments of a claimant, and include the ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *See id.*, §12.00(A)(2)(b) (2018). The Regulations inform claimants:

> If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1). Here, the ALJ found Plaintiff's "medically determinable mental impairments of depression… caused no limitations in understanding, remembering or applying information" and "no limitations in interacting with others." (Doc. 7-3 at 32)  In addition, the ALJ found Plaintiff had "mild limitations" with "concentrating, persisting, or maintaining pace" and "adapting or managing oneself." (*Id.*) The ALJ concluded that because Plaintiff' "mental impairment of depression does not cause more than minimal limitation in … [her] ability to perform basic mental work activities and is therefore nonsevere." (*Id.*)

Plaintiff does not challenge the ALJ's findings regarding the Paragraph B criteria or the conclusion at that her mental impairment is "nonsevere." (*See* Doc. 10) However, Plaintiff asserts the ALJ erred by not incorporating the mild limitations into her residual functional capacity. (*Id.* at 6-7)

2. Plaintiff's mental impairment and her RFC

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating an RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Further, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not, when determining a claimant's RFC. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

Plaintiff asserts the ALJ erred because she "found mild limitations in concentration, persistence, or pace and mild limitations in adapting or managing oneself," and Plaintiff believes "[t]he ALJ did not consider the presence of a non-severe mental impairment" in evaluating her RFC. (Doc. 10 at 6) According to Plaintiff, "the ALJ should [have] inquired about the impact of a non-severe mental impairment on the ability to perform semi-skilled work." (*Id.*) In support of this assertion, Plaintiff relies upon *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012). (*See id.* at 6-7) The Commissioner asserts *Hutton* is inapplicable because "the ALJ did not exclude Plaintiff's mental impairments from consideration when assessing her RFC." (Doc. 11 at 8)

In *Hutton*, the ALJ determined at step two that the claimant had a medically determinable mental impairment of PTSD, which caused "'mild' limitations in the area of concentration, persistence, or pace." *Id.*, 491 Fed. App'x at 850. The Ninth Circuit observed that under the Regulations, all impairments must be considered—whether severe or not—in formulating the RFC, and explained:

> Regardless of its severity, however, the ALJ was still required to consider Hutton's PTSD when he determined Hutton's RFC. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe[.]'"). The ALJ, however, failed to do so. Instead, the ALJ discredited Hutton, his treating physicians' opinions, and the VA's disability rating.

*Id.* Importantly, the Court indicated it did "not base [its] action… on any of these determinations by the ALJ." *Id.* The Court explained:

> [T]he the ALJ then mischaracterized Mrs. Hutton's testimony at least five times. Finally, the ALJ concluded that, based on Hutton's lack of credibility, his PTSD claims were in "great doubt." On that basis, the ALJ excluded Hutton's PTSD from consideration. This exclusion was legal error. To determine Hutton's RFC properly, the ALJ was required to consider Hutton's physical impairments and the "mild" limitations his PTSD caused with concentration, persistence, or pace, regardless of whether the ALJ doubted that they were caused by Hutton's ever-shifting military history. *See* 20 C.F.R. § 404.1545(a)(2). Further, while the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some "mild" limitations in the areas of concentration, persistence, or pace.

*Id.* at 850-851. Therefore, the Court vacated the decision of the ALJ and remanded the action to an ALJ to reconsider the evidence. *Id.* at 850.

Following *Hutton,* district courts in the Ninth Circuit "found reversible error where the ALJ failed to include mild mental limitations in the assessment of the RFC." *Thompson v. Saul*, 2019 WL

6

3302471, at *7 (E.D. Cal. July 23, 2019); *see also Gates v. Berryhill,* 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, 2015 WL 9023486, at *8-9 (N.D. Cal. Dec. 16, 2015); *Kramer v. Astrue*, 2013 WL 256790, at *2-3 (C.D. Cal. Jan. 22, 2013). However, courts determined *Hutton* is "inapplicable where the record demonstrates that the ALJ considered a claimant's non-severe mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC." *Thompson*, 2019 WL 3302471 at *7 (quoting *George A. v. Berryhill,* 2019 WL 1875523, at *5 (C.D. Cal. Apr. 24, 2019)); *see also Denney v. Saul*, 2019 WL 4076717, at *6-8 (E.D. Cal. Aug. 28, 2019); *Malherek v. Comm'r of SSA*, 2019 WL 5078223 (D. Az. June 5, 2019); *Jones v. Berryhill*, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018).

For example, this Court found *Hutton* was distinguishable where the ALJ found at step two that the claimant had nonsevere mental impairments at step two and considered additional evidence related to her mental impairment elsewhere in the decision. *Denney*, 2019 WL 4076717, at *7. The Court noted the ALJ found at step two that "any limitation resulting from Plaintiff's mental impairments alone was at most mild." *Id.* The ALJ also considered Denney's treatment records that indicated she did not take medication prescribed for depression, and found Denney "maintained activities of daily living that were inconsistent with a conclusion that her mental impairments severely impacted her functional abilities." *Id.* The court explained: "District courts in this circuit have generally declined to find reversible error when an ALJ found the claimant's mental impairments to be non-severe at step two and considered related, additional evidence of the claimant's mental impairments at step four." *Id.* at *8 (citations omitted). Because the ALJ discussed Plaintiff's mental impairments at step two and additional evidence "briefly at step four," the Court concluded "the ALJ adequately considered Plaintiff's mental impairments in formulating her residual functional capacity." *Id.* at *7-8.

The Central District found in *George A.* that *Hutton* did not apply where the ALJ considered evidence related to the claimant's mental impairments at step two and elsewhere in the record. *George A.*, 2019 WL 1875523, at *4-5. The claimant asserted "the ALJ erred by failing to include his non-severe mental impairments in assessing Plaintiff's RFC and in the hypothetical posed to the [vocational expert]." *Id.* at *4. The ALJ found at step two that the "Plaintiff's mental impairments caused no more than mild limitations in daily living; social functioning; and concentration, persistence or pace, and

therefore, were not severe." *Id.* The court noted that "in assessing Plaintiff's RFC at step four, the ALJ considered Plaintiff's mental impairments again." *Id.* Specifically, after step two, the ALJ considered both the medical record and "other evidence… relevant to Plaintiff's non-severe mental impairments," including the claimant's activities. *Id.* at *5. The ALJ found "Plaintiff's daily activities required the same mental and social abilities 'necessary for obtaining and maintaining employment,' such as running errands, going to malls, attending college, and performing household chores." *Id.* The court found no error because "the ALJ considered the evidence related to Plaintiff's mental impairments before concluding not to include any mental limitations in the RFC or in the hypothetical to the VE." *Id.*

Similarly, here, the ALJ identified "mild limitations in concentrating, persistence, or maintaining pace" and "mild limitations in adapting or managing oneself" in evaluating the Paragraph B criteria at step two. (Doc. 7-3 at 32) The ALJ indicated that in formulating the RFC, she considered "all symptoms" and "the entire record." (*Id.*) For example, the ALJ noted Plaintiff reported she was "able to finish what she starts and she could follow instructions very well." (*Id.* at 33, citing Exh. 2E and 6E) The ALJ also noted Plaintiff took Xanax "to help with anxiety and sleep, but she was down to taking them as needed." (*Id.* at 35) Further, ALJ noted Plaintiff was "able to prepare simple meals, do housework such as dishes, dusting, laundry and ironing, go outside, shop in stores and by computer, and socialize with others." (*Id.* at 33; *see also id.* at 35) The ALJ found some of the "mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (*Id.* at 35) As in *Denney* and *George A.*, it is clear the ALJ considered evidence related to Plaintiff's mental impairments after step two, including her activities of daily living and evidence concerning her ability to complete tasks and follow instructions. Thus, the record does not support Plaintiff's assertion that the ALJ did not consider her nonsevere mental impairment in formulating the RFC. *See Denney*, 2019 WL 4076717 at *8 (finding no error where the ALJ discussed additional evidence related to the claimant's mental impairment after step two).

3. Conclusion

The ALJ made an affirmative finding that Plaintiff's mental impairment was nonsevere, which Plaintiff does not dispute. The omission of mental limitations from the RFC rather reflects the conclusion that the impairments would not interfere with the ability to perform basic work activities,

which the ALJ reached at step four after considering Plaintiff's ability to complete tasks, follow instructions, medical record, and daily activities.  Consequently, the Court finds Plaintiff fails to show the ALJ did not adequately consider her mental impairments with the RFC. *See Denney*, 2019 WL 4076717, at *8; *George A.*, 2019 WL 1875523, at *4-5; *Dray v. Astrue*, 353 Fed. Appx. 147, 150-51 (10th Cir. 2009) (evidence of mild mental impairments did not contradict ALJ's RFC determination omitting any limitations related to mental impairments).

Only limitations supported by substantial evidence must be included in questions presented to vocational experts. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 886 (9th Cir. 2006). An ALJ need not include "any impairments that the ALJ has properly rejected." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Thus, if an ALJ finds a mild mental impairment is adequately addressed in an RFC that omits mental limitations, the hypothetical questions posed to the vocational expert need not include mental limitations. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (explaining it is "proper for an ALJ to limit a hypothetical" and finding the ALJ did not err by omitting any limitations for depression when questioning the vocational expert where the record showed Osenbrock's "depression [was] a mild impairment, which presented no significant interference with the ability to perform basic work-related activities"); *Bias v. Astrue*, 484 Fed. Appx. 275, 276 (10th Cir. 2012) (when the ALJ finds there are no work-related limitations related to a nonsevere mental impairment, "the ALJ is not required to include that impairment in his hypothetical").  Because the ALJ determined Plaintiff's nonsevere depression did not require limitations in the RFC, the ALJ did not need to include mental limitations in the hypothetical questions posed to the vocational expert to determine Plaintiff's ability to perform work in the national economy.  Plaintiff fails to show any reversible error on these grounds.

**B.     Transferable Skills**

At step five, the Commissioner bears the burden "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1560(b)(3)).  The Commissioner may satisfy this burden by (1) referring to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (known as "the Grids"); or (2) calling a vocational expert to testify about specific representative

occupations that a claimant could perform, as well as the availability of such jobs in the national economy. *Osenbrock*, 240 F.3d at 1162 (citing *Tackett*, 180 F.3d at 1100-01).

The ALJ called a vocational expert, who testified regarding Plaintiff's past relevant work and availability of other work in the national economy. (*See* Doc. 7-3 at 36) Plaintiff asserts that the ALJ erred at step five by misstating the testimony of the vocational expert related to the skills obtained in Plaintiff's past relevant work as a registered nurse or nurse practitioner. (Doc. 10 at 7-8) In addition, Plaintiff asserts the ALJ failed to comply with Agency policy set forth in POMS DI 25015.017, which is "a directive describing how to assess the materiality and process for a transferability of skills assessment." (*Id.* at 9-10)

1. ALJ's findings on Plaintiff's transferable skills

Occupations are classified as "unskilled," "semiskilled," or "skilled." 20 C.F.R. § 404.1568. Unskilled work is the least complex work, consisting of tasks that can be learned on the job in 30 days or less. *See* § 404.1568(a); SSR 82-41[1], 1982 WL 31389 at *2 (Jan. 1, 1982). "Semiskilled occupations" are "distinctly simpler than the more highly skilled type of jobs" but still "contain more variables and require more judgment than do unskilled occupations." SSR 82-41, 1982 WL 31389 at *2; *see also* 20 C.F.R. § 404.1568(b) (semiskilled work requires "some skills"). Skilled work is the most complex type of work, requiring "qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produce." *Id.* § 404.1568(c).

If a claimant is unable to perform past relevant work "and that work has been determined to be skilled or semiskilled," the ALJ must consider whether the skills acquired are transferable to a new position. SSR 82-41, 1982 WL 31389 at *1. "A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." SSR 82-41, 1982 WL 31389 at *2. The transferability of skills to a new occupation is evaluated based on a likelihood

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

that: "(1) the new job requires the same or a lesser degree of skill than the old job; (2) the same or similar tools and machines are used in both jobs; and (3) the same or similar raw materials, products, processes, or services are involved in both jobs." *Aldrich v. Barnhart*, 151 Fed. App'x 561, 562 (9th Cir. 2005). When considering transferable skills, the claimant's age, education level, and prior work experience are all relevant factors. 20 C.F.R. §§ 404.1563, 404.1564, and 404.1565.

If an ALJ determines that a plaintiff has acquired transferable work skills from past employers, the ALJ must expressly identify the acquired skills. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1223-26 (2009). "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the … ALJ's decision." *Id.* at 1223, quoting SSR 82-41, 1982 WL 31389 at *7. "It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court." *Id.* Even where the ALJ relies on vocational expert testimony to determine a claimant has transferable skills from past work, the ALJ must identify in the decision what work skills are transferable and to what specific occupations those acquired skills apply. *See id.* at 1225.

The ALJ purported to rely on the vocational expert testimony from Jeff Beeman ("the VE") to support her finding that Plaintiff "has acquired work skills from past relevant work." (Doc. 7-3 at 36) The ALJ indicated:

> The vocational expert testified that the claimant's past relevant work as a registered nurse was skilled with a specific vocational preparation (SVP) code of 7 and required the following skills: lifting patients, moving equipment, passing instruments, and coordinating.

(*Id.*) The ALJ then determined Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers," including outpatient admitting clerk, hospital admitting clerk, and rehabilitation clerk. (*Id.* at 36-37)

However, the VE did not identify the skills acquired or that were transferable to the positions identified. (*See* Doc. 7-3 at 69-75) The ALJ asked the VE to describe Plaintiff's past relevant work, and the VE indicated he had "a couple preliminary questions" before he could do so. (*Id.* at 69-70) The VE noted Plaintiff worked at a hospital and surgery centers and the following testimony was

obtained:

> [VE]: For all intents and purposes, from 2003 to 2014, your various work at the hospital and surgery centers, can you give me, as best you can, the range of the most that you had to lift by yourself?
>
> CLMT: I had to help, I had to lift patients, assisted with patients, equipment. I don't – we had all kinds of equipment in the OR we had to lift and move around. I had to lift extremities. I had to lift like patient's legs to prep by myself because when you prepped them, you had to be sterile to prep them by yourself, so we did that. And then we were always moving equipment around, and repositioning patients, and so we were always doing that in the OR.
>
> VE: Well, when you say by yourself, 50 pounds or more than 50 pounds?
>
> CLMT: Probably 50 pounds and less.
>
> VE: Okay. On a consistent basis?
>
> CLMT: Yes.
>
> VE: Are any of your credentials current?
>
> CLMT: Yes.

(Doc. 7-3 at 70) The VE then proceeded to describe Plaintiff's past relevant work as a "Registered Nurse, or Nurse Practitioner, which Plaintiff "performed at medium, or even heavy [exertion]." (*Id.* at 71) The VE explained. "When you're taking the weight of somebody who is non-ambulatory, or needing to move, move somebody on a surgical table, or whatever, it can be more than, more than medium, rise to heavy." (*Id.*) The ALJ then asked if "the claimant acquire[d] any transferable skills in her past work," which the VE responded: "Yes. I mean with her nurse background, there are, you know, through the hierarchy, there are various positions that she could do, Your Honor." (*Id.* at 71-72) The VE stated Plaintiff had skills that would transfer to sedentary jobs, and stated such jobs included outpatient admitting clerk, hospital admitting clerk, and rehabilitation clerk. (*Id.* at 73-74)

Although the VE testified Plaintiff had acquired transferable skills, the VE did not identify these skills at any point during the hearing, or explain the "hierarchy" to which he referred. Rather, it appears that the ALJ gleaned "skills" from Plaintiff's testimony regarding the amount of weight she was required to lift, and the tasks she performed while doing so. Further, it is unclear from the record whether the "skills" are transferable to the positions identified by the VE. *See* SSR 82-41, 1982 WL 31389 at *2; *Aldrich*, 151 Fed. App'x at 562 (explaining transferability is evaluated, in part, based on

the likelihood that a new job requires "the same or similar" processes, products, services, materials, tools, and machines). Indeed, because Plaintiff is limited to less than the full range of sedentary work, it is unlikely that the skills of "lifting patients" and "moving equipment" are transferable to the sedentary positions identified by the VE and the ALJ at step five.

Because the record is insufficient for the Court to determine what skills Plaintiff obtained from her past relevant work, and whether the skills were transferable to the positions available in the national economy, the ALJ's findings at step five are not supported by substantial evidence in the record. *See Bray*, 554 F.3d at 1125 ("[w]hen the issue of skills and their transferability must be decided, ... [the] ALJ is *required* to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.") (quoting SSR-82-41, 182 WL 31389 at *7).

2. Compliance with POMS

It is well-established in the Ninth Circuit that agency policy set forth in the Program Operations Manual System ("POMS") "does not impose judicially enforceable duties on either [the] court or the ALJ." *Carillo-Yeras*, 671 F.3d 731, 735 (9th Cir. 2011); *see also Lockwood v. Comm'r*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS does not impose judicially enforceable duties on the SSA"); *Durden v. Colvin,* 549 Fed. App'x 690, 690-91 (9th Cir. 2013) ("the POMS does not have the force and effect of law and, thus, does not impose judicially enforceable duties on the ALJ"). Thus, the Court is unable to find error to the extent Plaintiff challenges step five finding "based on alleged violations of the agency manuals." *See Deuschel v. Comm'r of SSA*, 526 Fed. App'x, 715, 718-719 (2013).

**C. Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the

ALJ would be required to find the claimant disabled were such evidence credited." *Smolen*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to support her findings at step five with findings sufficient for the Court to find Plaintiff had acquired transferable skills from her past relevant work, including what skills were acquired and the specific positions to which the skills could be transferred. The matter should be remanded for the ALJ to set forth facts sufficient to support the step five findings. *See Bray*, 554 F.3d at 1226 (remanding the action for the ALJ to "make specific findings on whether [the claimant] has transferable skills," and noting that "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision").

## CONCLUSION AND ORDER

The ALJ erred in evaluating the vocational expert's testimony and finding Plaintiff had acquired transferable skills. Because the step five findings are not supported by substantial evidence, the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. Plaintiff's appeal of the administrative decision (Doc. 10) is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Shelley Ann Sanguras, and against Defendant Andrew Saul, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 15, 2021**   /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE